Good morning, your honors, and may it please the court. My name is Margaret Farrin. I'm from the Federal Public Defender's Office. I'm appearing today on behalf of the defendant and appellant Sohiel Kabir. Sentencing courts have several well-established duties. They must apply the correct legal standards. They must address the parties non-frivolous arguments. And they must consider the defendant as he or she stands before the court on the day of sentencing, not at some prior point in time. The district court in Mr. Kabir's case fell short of those requirements in four respects. First, it applied a two-level enhancement on the basis that Mr. Kabir was an organizer or leader of the conspiracy without any evidence or even any findings that Mr. Kabir ever exercised any control over his co-conspirators. With respect, maybe we read a different record, but I'm having trouble with that. It seems that there was lots and lots and lots of evidence of your client's role with these two folks, and whether you call it an organizer or a leader, it really doesn't matter which one. I could go down the list, but I don't think you want me to take the time to do that. But how can you say that he was not either an organizer or a leader in this circumstance? So, Your Honor, I think I'd like to start with the legal standard, which this court's case law is actually very clear on what's required. You need to have either control or organizational authority. That's from this court's case in U.S. v. Harris from just last year. That's this court's most recent pronouncement. In Harris, the court said if there is no criminal organization at issue, for example, a drug deal where there's a buyer and a seller or people are playing defined roles, the organizational authority component drops out. You focus only on control. And that's from footnote 1 of Harris. And so the court said because there's no organization here, we're only focusing on control. And the court went further and defined what is control. It's actually demand, coercion, threat, some ability to impose your will upon other members of the conspiracy or the organization. I'd also like to say that even if this court – while the organizational authority prong doesn't apply because there is no criminal organization, even that prong actually does require decision-making authority, the authority to make a decision that others then must follow and are not free to disregard. Let me ask you this. I don't pretend to be an expert in Islamic law or any of the adjuncts of that, but my reading of this record suggests that Mr. Kabir may be referring to these folks as brothers and in fact using an ecclesiastical type persuasion that this was a moral obligation, etc., etc. Is that type of persuasion, if it exists, enough out of the standard? That is not control because he never directed them to do anything. And what I think is honestly very striking from this record, Your Honor, is nowhere in any of the pleadings, going back to the government's sentencing papers, the district court's ruling, even the government's brief in this appeal, never does the word direct or control appear. Don't we have to find that the district judge abused his discretion? Isn't that the standard? It is abuse of discretion, Your Honor, but abuse of discretion happens when you don't apply the correct legal standard. That is in itself an abuse of discretion. So the district court never found any control. I'd just like to focus on the verbs the district court used. It said he recruited, introduced them to Islam and al-Awlaki. He urged, he advised, he was a role model, a hero. Never does it say that he directed. And in fact, if you go back to the record pages that are discussed by the government and Mr. Kabir's appeal briefs in the separate appeal where the record is comprehensively discussed, he is in conversations on Skype and in emails saying, it's great over here in Afghanistan. Come on out. He didn't say come to Afghanistan. He said, would you like to come? He invited them. He didn't say come. He said, and even as to which organization to join, the Taliban or al-Qaeda, they never, in fact, this court held that there was never any agreement on that. Certainly, Mr. Kabir didn't direct that. Should Gojali be allowed to join the conspiracy? The record shows that Kabir said, I don't know him as well as you, to De Leon. You decide. But you don't think he was training them at all? What he did at most and what the district court, even the most the district court found was that he, quote, instructed. What that means was he was giving them advice on how to accomplish what they were doing. Well, that doesn't differentiate this case from the Whitney. Telling them how to pack and things like that. Well, right. We have it in Whitney. How do you file false tax returns? That's not enough. You're simply, it's simply one participant telling another how to do what they are doing as part of the criminal conduct. And Holden case, similarly, how to wire money to an overseas account. That is not enough. That's facilitation. That's instruction. That's not control or direction. And that's exactly what we have here, nor was there ever any finding of that by the district court here. Can I ask you on this one, if we would agree with your argument, it's a two-point enhancement. It has no effect on his, because he hit the maximum points under the U.S. sentencing guidelines. But we would still have to send it back because even though the points wouldn't have changed the sentencing, he'd have to take a new consideration of the sentencing. I think there's a reasonable, well, first of all, I guess point one, Your Honor, is that this isn't the only error that's occurred here. But I'm just talking about this one specifically. Obviously, the other issue, that would make a big difference. I think that's correct, Your Honor, because it's not just a matter of the guidelines range. As Your Honor said, that wouldn't have changed. But it doesn't, the whole sort of purpose and idea of this enhancement is that it reflects increased culpability. So if the district court found that he qualified for that, it found that he was directing and instructing others on what to do. And that really does increase the culpability, as this court has held a lot more than merely facilitating or being integrally involved in or advising. That's different. So you're saying that De Leon and Santana were just operating on their own and they weren't following the directions of Mr. Kabir. I don't know that we need to go so far as to say that they were on their own. I mean, the nature of it's a conspiracy is people are acting together. But they weren't acting at his direction, and I just think it's very significant that this case has been through many, many stages and never once has- If there was a leader of this group, it was him. Well, but what does a leader enhancement, what is- But for him, none of the others would have participated. The but-for test is in Avila and Harris, but-for is, that's a legal error to apply a but-for test. That cannot and is not the legal standard. So that doesn't get us to the leader organizer. Do you want to save any time, or what's your plan? Well, Your Honor, I see I have about two minutes left, and I would like to, I guess, address the remaining errors that were raised, which were under plain error. As I mentioned, the district court sort of failed to look at Mr. Kabir as he appeared before the court on the day of sentencing in a few different respects. It didn't acknowledge the pretty significant fact that this court had reversed, for insufficient evidence, two of Mr. Kabir's four convictions, which were ones that increased his culpability. They were finding that he had been convicted of not only providing, conspiring to materially support terrorism, but to materially support a designated terrorist organization, Al-Qaeda, which has a higher statutory max. It goes from 15 up to 20 for a designated terrorist organization. Well, that had been reversed by the time of the resentencing. The district court never acknowledged that. And not only that, but when it summarized the facts, it specifically said that he had conspired to assist Al-Qaeda. That's on ER 17, and I think that is a plain error. That just wasn't correct. It was page 7. But does it matter if the terrorist group he referred to was slightly different? If you're going to kill American soldiers, it doesn't matter which one's doing it, does it? Well, I think it does. Certainly when Congress enacted the statutes, 2339A versus 2339B, it did consider assisting one of these specific designated terrorist organizations to be a significantly more culpable crime. And I think the district court, even if it were going to sort of not find that to be persuasive, it should have at least acknowledged and addressed the fact that the situation had materially changed. The Quintieri case says the constellation of facts and circumstances was different, and I think also we can get an analogy, kind of look at the Supreme Court's decision in Concepcion, and this court's decision in Lizarrares-Chacon. Legal developments since the prior sentencing are relevant under 3553, and that should have been addressed. And I think especially when you combine that with the fact that the district court kind of went out of its way to talk about his allocution and his sentencing letter, saying he never expressed remorse. And it seemed quite bothered by that, but actually it wasn't an accurate reading of the record, and I think it was clearly erroneous to find that. Perhaps we look at it differently, but as I read what the judge said, he knew what your client said, but he just didn't believe him. He didn't think he was remorseful. And since it's an abuse of discretion, how do we deal with that? Well, I think that what the district court actually said is on ER40, on line 17 to 18, she said, nowhere is there a statement of remorse for his conduct. That is not correct. There was a statement. Whether the court believed or didn't believe, it's not true that nowhere was there a statement. Let's say that that is correct. Does that constitute a basis for reversal? I think when you look at it sort of in combination with the failure to acknowledge the very different legal and the factual posture after the prior appeal, the remorse, and then just sort of the other errors that have been raised, I think it does add up to a significant error that I think does warrant another look. Let me ask two other of my colleagues some additional questions. Thank you very much for your argument. Thank you, Your Honors. All right. Let's hear from the government. Rima El-Abbani, is that correct? I apologize if I'm saying it wrong. No worries. Good morning. May it please the Court, Rima El-Abbani on behalf of the United States. None of the defendant's procedural claims constitute prejudicial plain error. Additionally, the court did not clearly err when it imposed a two-level enhancement pursuant to 3B1.1c. As such, defendants below guideline sentence should be affirmed. Now, starting with a question that the court raised with opposing counsel with respect to the guidelines, in this case on resentencing, despite the fact that the defendant had his convictions affirmed on the most serious crimes of conviction, including the one that had a lifetime statutory maximum, and despite the fact that his guideline sentence was life imprisonment, the court essentially departed downward to a level 35 and criminal history category 6, an eight-level downward departure from a level 43 and criminal history category 6. In Excerpt of Records 219, which was the court's transcript from the original sentencing, it gives a little bit of the court's thought process. During that hearing, she stated, even if you don't add those 12 levels under 3A1.4, the offense level would be 35. And at a criminal history category of 6, it would be 292 to 365 months, and at criminal history category 5, it would be 235 to 293 months. And so the court has given the defendant a significant downward departure that demonstrated that the court sincerely took into— How does that all affect the nuts and bolts of whether this guideline should have been imposed? I mean, I ask the question of, yeah, if Alvarez is successful on the two-point enhancement, it really has no effect on the guideline range. But wouldn't you still have—if we agreed, we'd still have to remand it for reconsideration? Well, first of all, Your Honor, the government believes that it was not clearly erroneous for the court to impose that two-level enhancement. I understand, but I'm just asking, yes, there was leniency here. Clearly the district court could have, perhaps should have, sentenced him to a greater term. But on what we're trying to decide here, tell us why that enhancement doesn't apply. Or are you making the point that it's immaterial because there was so much other leniency given that you guys don't even need to decide? Well, first of all, the government would agree with the court's prior statement that there is ample evidence in the record that this defendant exercised organizational control over his colleagues. He talked to them about training opportunities. He provided contacts in Afghanistan. He was the one who was really organizing this entire criminal conspiracy. Without his organizational direction to these other individuals, as the court clearly stated in the record, they would not have done this on their own. But what we heard was the but-for cause is not enough. So how do you get to—you know, you can't just say, well, they wouldn't have done this without him. I guess your point is he affirmatively took these actions that moved this forward, and that is enough for organizational. Yes, Your Honor. I would cite the case, which is my brief, United States v. Doe. And in that case, the defendant—the court discusses coordinating the activities of others to achieve a desired result as an organizer for purposes of enhancement under 3B1.1c. And then I would just simply cite to the record in terms of the court finding that the defendant played a pivotal role in introducing the defendants to radical extremist views, encouraging them to travel, providing them with direction and organization with how to conduct that travel, and them ultimately following the directions. Your opposing counsel relies a lot on Harris. How would the government distinguish Harris on this leadership organization issue? Again, Your Honor, I would simply—the best argument that the government is able to make is relying on the organizational coordination of the defendant in this case. Again, the government emphasizes that there's ample evidence in the record to support the two-level enhancement. However, if the court does not find that, it would be, in the government's view, harmless, based on the significant guidelines in this case. Turning to the three procedural arguments that the defendant raised— Can I just ask you one? So you say it would be harmless. Is it harmless in the sense that my colleague questioned? In other words, it wouldn't have any ultimate impact on his sentence. Is that what you mean? It would ultimately have no impact on his sentence. And that meets a harmlessness standard. I don't want to misspeak, Your Honor, and so I would just simply rely on the government's brief and say that it's not clearly erroneous. Turning to the procedural arguments, it's clear in this case that the court went above and beyond in taking into account the new facts and circumstances after remand. It adopted the findings in the PSR regarding the crimes, but it also went back and reviewed the trial transcripts extensively. It made new findings of fact. It took into account both new aggravating and mitigating factors and ultimately credited the defendant's mitigating factors in the fact that even though the government raised new conduct that happened after the original sentencing, the court maintained the original substantially below guideline sentence of 300 months, unless the court has any further questions of me. Very well. Thank you. Thank you for your time. We thank both counsel for your argument, and the case just argued is submitted.
judges: SMITH, NELSON, UNKNOWN